IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MENARD, INC., | ) |
| Plaintiff, | ) |
| | ) No. 03 C 8313 |
| v. | ) |
| | ) |
| WELLS MANUFACTURING COMPANY and CASTWELL PRODUCTS, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 20, 2003, Plaintiff Menard, Inc. ("Menard") filed its original Complaint in this lawsuit and on November 28, 2004, the Court stayed this action pending bankruptcy proceedings. On February 28, 2007, Menard filed a First Amended Complaint alleging violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6900 *et seq.*, as well as state law claims against Defendants Wells Manufacturing Company ("Wells") and Castwell Products ("Castwell"). Before the Court is Menard's Motion for Summary Judgment on its RCRA claim in Count II and Defendants' Motion for Summary Judgment regarding Menard's state law claims in Counts IV through XII both pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court denies Menard's summary judgment motion and grants in part and denies in part Defendants' summary judgment motion. Further, the Court grants in part and denies in part Defendants' Motion to Strike Menard's Rule 56.1 Response and Statement of Additional Facts.

## BACKGROUND

**I.      Northern District of Illinois Local Rule 56.1 Statements**

Because the parties both argue that the other side failed to follow Northern District of Illinois Local Rule 56.1, the Court starts with a summary of Rule 56.1's requirements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005).

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006); *Solaia Tech. LLC v. Arvinmeritor, Inc.,* 361 F.Supp.2d 797, 826-27 (N.D. Ill. 2005). The types of evidentiary material available to support Local Rule 56.1 Statements are numerous, but the most common materials include affidavits, deposition transcripts, and business documents. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Moreover, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997); *see, e.g., Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 630 (7th Cir. 2006).

A litigant's failure to respond to a Local Rule 56.1 Statement results in the Court

admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon*, 233 F.3d at 528. Finally, the Court may disregard statements and responses that do not cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). With these principles in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     Castwell Site

Wells owned property located at 7800 North Austin Avenue, Skokie, Illinois until 1995 (the "Castwell Property"). (R. 54-1, Defs.' Rule 56.1 Stmt. Facts ¶ 4; R. 62-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 4.) Until approximately 1985, Wells operated a solvent degreaser at the Castwell Property during which Trichloroethene ("TCE") was released onto the Castwell Property. (Defs.' Stmt. ¶¶ 9, 10.) A Castwell employee learned of a groundwater plume during the due diligence period related to Castwell's July 1995 purchase of the Castwell Property from Wells. (*Id.* ¶ 11; R. 58-1, Pl.'s Resp. Defs.' Stmt. Facts ¶¶ 4, 11.) Menard owns property located at 6000 West Oakton Street, Skokie, Illinois (the "Menard Property"), which is adjacent to the Castwell Property. (*Id.* ¶¶ 6, 7; Pl.'s Stmt. Facts ¶ 2.)

### B.     Castwell's Correspondence with Menard

On December 18, 1995, a Castwell attorney sent Menard's corporate counsel a letter – which enclosed a letter to the Illinois Environmental Protection Agency ("Illinois EPA") and a Phase II Site Investigation Report – concerning the Castwell Site that abuts the Menard Property

3

and the possibility of the groundwater plume. (Defs.' Stmt. Facts ¶¶ 13, 14; Exs. 4.A, 4.A1, 4.A2.) In February 1996, Menard sent correspondence acknowledging receipt of the December 18, 1995 letter stating that Castwell's site investigation proposal would have an adverse impact on Menard's operations. (*Id*. ¶ 21, Ex. 4.B, Pl.'s Resp. Defs.' Stmt. Facts ¶ 21.)

Counsel for Castwell also sent a letter to Menard's corporate counsel on January 29, 1997, stating in pertinent part:

> Some time ago Castwell became aware of a trichlorethylene plume which it believed extended north onto your property and the high school athletic field. The site investigation has revealed that the plume does not reach the high school property but has, in all probability, reached the Menard property. The site has been entered in the Illinois voluntary clean-up program and the Illinois Environmental Protection Agency is supervising the investigation and remediation of the plume.

(Def.'s Stmt. Facts ¶ 14, Ex. 4.C.)

By letter dated February 5, 1997, an employee who performed work at the Castwell Site corresponded with Menard's general counsel discussing and attaching the Phase IID Site Investigation Report that was submitted to the Illinois EPA. (*Id*. ¶ 15, Exs. 5.A, 5.A.1.) Figure 4.5 attached to the Phase IID Site Investigation Report sent with the February 5, 1997 letter graphically illustrated the contours of the known groundwater plume on the Castwell Property and the probable contours of the groundwater plume on the Menard Property. (*Id*. ¶ 17.)

On April 28, 1997, a staff engineer/project coordinator who performed work at the Castwell Site sent a fax to Menard's corporate counsel regarding the groundwater investigations on the Castwell Site and Menard Property and attached a draft report to be sent to the Illinois EPA. (*Id*. ¶¶ 18, 19.) As indicated by Figure 3 on the draft report, a monitoring well on the border of the Menard and Castwell Properties was directly north of the "former degreaser

4

building," which was the identified source of the groundwater plume. (*Id*. ¶ 20.)

### C. Consent Order

On April 3, 2006, Judge Thomas P. Quinn, Cook County Circuit Court, Chancery Division, entered a Consent Order in the case of *People of the State of Ill. v. Castwell Products*, 06 CH 06360 (Chancery Division). (Pl.'s Stmt. Facts ¶ 12.) The Consent Order between the State of Illinois and Castwell states:

> The objective of this Consent Order is to have an enforceable order which will recover future oversight costs incurred by the State related to Work at the Site, provide for additional remedial Work at the Site, which will assure the protection of the public health, welfare and the environment, and compliance with the Act [Illinois Environmental Protection Act] and Board rules and regulations promulgated thereunder.

(*Id.,* Ex. D, at 2, 12-13.)

The Consent Order also stated that the "Parties further stipulate that this statement of facts is made and agreed upon for purposes of settlement only and that neither the fact that a party has entered into this Consent Order, nor any of the facts stipulated herein, shall be introduced into evidence in any other proceeding. . . ." (*Id.* ¶ 13, Ex. D, at 1-2.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On cross-motions for summary judgment, the Court construes the facts and reasonable inferences in favor of the party against whom the motion under consideration is made. *Schneider v. Sentry Group Long Term Disability Plan,* 422 F.3d 621, 626 (7th Cir. 2005). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

**I.  Count II – Resource, Compensation, and Liability Act ("RCRA") Claim**

In Count II of the First Amended Complaint, Menard brings a claim under RCRA and filed the present summary judgment motion as to this claim. "RCRA is a comprehensive statute governing the treatment, storage and disposal of hazardous waste." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002) (citing *City of Chicago v. Environmental Defense Fund,* 511 U.S. 328, 331, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994)). The primary purpose of RCRA is to "limit the harmful effects of hazardous waste 'to minimize the present and future threat to human health and the environment.'" *Albany Bank,* 310 F.3d at 972 (quoting 42 U.S.C. § 6902(b)). A citizen may bring a claim under RCRA "against any person, including ... any past or present generator ... who has contributed or who is contributing to the past or present handling ... of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.* (quoting 42 U.S.C. §

6

6972(a)(1)(B)).

To state prima facie claim under RCRA, "a plaintiff must allege (1) that the defendant has generated solid or hazardous waste, (2) that the defendant is contributing to or has contributed to the handling of this waste, and (3) that this waste may present an imminent and substantial danger to health or the environment." *Id.* (citation omitted). Under the RCRA, a private citizen may only recover injunctive relief. *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 484, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996); *Avondale Federal Sav. Bank v. Amoco Oil Co.,* 170 F.3d 692, 694 (7th Cir. 1999).

Under RCRA's fee-shifting statute, a district court may "award a prevailing citizen suit plaintiff attorney fees 'whenever the court determines such an award is appropriate.'" *AM Int'l, Inc. v. Datacard Corp.,* 106 F.3d 1342, 1352 (7th Cir. 1997) (citing 42 U.S.C. § 6972(e)). Section 6972(e) states in relevant part:

> The court, ***in issuing any final order in any action brought pursuant to this section*** or section 6976 of this title, may award costs of litigation (including reasonable attorney and expert witness fees) to the ***prevailing or substantially prevailing party***, whenever the court determines such an award is appropriate.

42 U.S.C. § 6972(e) (emphasis added).

Although the Court has yet to issue a final order concerning Menard's RCRA claim, Menard contends that it is a prevailing party under RCRA, and thus seeks an award of attorney's fees and costs under Section 6972(e). More specifically, Menard relies on the Consent Order that Judge Quinn entered in the case of *People of the State of Ill. v. Castwell Products* – a case in which Menard was not a party – to support its claim for attorney's fees and costs under RCRA. Although Menard has failed to cite legal authority holding that non-parties to an action may seek attorney's fees and costs under RCRA in a subsequent lawsuit, Menard relies upon

7

cases from the Sixth and Ninth Circuits asserting that it is a prevailing party under Section 6972(e) because the Consent Order is a "judicial imprimatur" that altered the parties' legal relationship. *See Kasza v. Whitman*, 325 F.3d 1178, 1180 (9th Cir. 2003); *see also DiLaura v. Township of Ann Arbor,* 471 F.3d 666, 670 (6th Cir. 2006).[1]

In *Kasza*, the Ninth Circuit articulated that "there must be a judicial imprimatur which alters the parties' legal relationship in order for a party to be a prevailing party for purposes of an award of attorney's fees." *Id*. at 1180. The Sixth Circuit's decision in *DiLaura* explains that the focus of a court's "prevailing party inquiry must be the material alteration of the legal relationship of the parties.'" *Id.* at 670 (citation omitted). A "material alteration" requires the plaintiff to "obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Id*. (quoting *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("plaintiffs may be considered 'prevailing parties' for attorney's fees purpose if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." ). Based on the language in *DiLaura*, *Farrar*, and *Hensley*, a material alteration of the legal relationship between the parties necessarily refers to the actual parties in a RCRA lawsuit because the plaintiff is required to obtain an enforceable judgment, consent decree, or settlement against the defendant. *See*

---

[1] In *DiLaura*, the plaintiffs brought their action under the Religious Land Use and Institutionalized Persons Act, *see* 42 U.S.C. § 2000cc *et seq.,* and thus the Sixth Circuit analyzed the award of attorney's fees under 42 U.S.C. § 1988(b). *Id.* at 670. "In light of the dearth of case law construing" Section 6972(e), courts follow "precedent which interprets the attorney's fee provision of 42 U.S.C. § 1988(b)." *Browder v. City of Moab,* 427 F.3d 717, 720 (10th Cir. 2005).

*DiLaura,* 471 F.3d at 670. In other words, a plaintiff may be a "prevailing party" under the statute if "the relief sought by the lawsuit was in fact obtained as a result of Plaintiff[] bringing this action." *Kasza v. Browner,* 133 F.3d 1159, 1175 (9th Cir. 1998).

Here, Menard was not a party to the underlying action resulting in the state court Consent Order, and thus Menard cannot be a "prevailing party" in this RCRA action because it did not obtain relief against Defendants – the State of Illinois did. Equally important, the Consent Order was governed by the Illinois Environmental Protection Act, 415 ILCS 5/1 *et seq.*, and not RCRA. Moreover, the Court has yet to enter a final order in this action, and thus Section 6972(e) does not apply under the present circumstances. *See Camellia Park Homeowners Ass'n v. Greenbriar Homes Co.,* 882 F.Supp. 150, 151 (N.D. Cal. 1995) ("[u]nder § 6972(e) an award of attorney's fees and costs is proper only after a ***final*** order has been issued") (emphasis in original).

Because Menard was not a party to the underlying action that resulted in the Consent Order and this Court has yet to enter a final order concerning Menard's RCRA claim, the Court denies Menard's summary judgment motion regarding Count II of the First Amended Complaint.

## II. Counts IV through XI – Trespass & Nuisance Claims

In its First Amended Complaint, Menard alleges claims of negligent continuing trespass (Counts IV & VI); intentional continuing trespass (Counts V & VII); negligent continuing nuisance (Counts VIII & X); and intentional continuing nuisance (Counts IX & XI ). In their summary judgment motion, Defendants maintain that these common law claims are barred by Illinois' five-year statute of limitations.

### A. Legal Standards

Under Illinois law, claims "to recover damages for an injury done to property, real or personal" are subject to a five-year statute of limitations. *See* 735 ILCS 5/13-205; *Vector-Springfield Prop., Ltd v. Central Ill. Light Co.,* 108 F.3d 806, 807 (7th Cir. 1997) (applying Illinois' five-year period to claims for trespass and nuisance); *Powell v. City of Danville*, 253 Ill.App.3d 667, 668, 625 N.E.2d 830, 830-31 (Ill. 1993) (applying the five-year period to claims for trespass and nuisance). Illinois courts recognize the discovery rule – the effect of which "is to postpone the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hollander v. Brown,* 457 F.3d 688, 692 (7th Cir. 2006) (quoting *Golla v. General Motors Corp.,* 167 Ill.2d 353, 212 Ill.Dec. 549, 657 N.E.2d 894, 898 (1995)). "[T]he discovery rule starts the statute of limitations from the date when the plaintiff discovers, or reasonably could discover, both her injury and the causal connection between her injury and the tortious conduct." *Id.* at 692-93 (citation omitted).

Here, Menard maintains that the Illinois continuing tort doctrine – also known as the continuing violation doctrine – applies. "The doctrine of continuing violation, as the Illinois Supreme Court has held, 'does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a continuous whole for prescriptive purposes." *Evans v. City of Chicago,* 434 F.3d 916, 934 (7th Cir. 2006) (quoting *Feltmeier v. Feltmeier,* 207 Ill.2d 263, 279, 278 Ill.Dec. 228, 798 N.E.2d 75 (Ill. 2003)). In other words, a "continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Kidney Cancer Ass'n v. North Shore Community Bank & Trust Co.,* 373 Ill.App.3d 396, 403, 311 Ill.Dec. 512, 869 N.E.2d 186

10

(Ill. 2007) (citation omitted). In *Feltmeier*, the Illinois Supreme Court held that when tortious conduct is continuing "the statute of limitations is only held in abeyance until the date of the last injury suffered or when the tortious acts cease." *Feltmeier*, 207 Ill.2d at 284; *see also Powell,* 253 Ill.App.3d at 669 ("There are situations where the tortious conduct is continuing, and the limitations period begins on the date of the last injury (the date the tortious acts cease)."). In *Powell*, the Illinois Appellate Court distinguished continuing torts from continuing injuries relying on *Leckrone v. City of Salem*, 152 Ill.App.3d 126, 105 Ill.Dec. 87, 503 N.E.2d 1093 (Ill. 1987):

> *Leckrone* provided a classic example of continuing tort. The defendant city allegedly ***continued*** to dump sewage into a stream, polluting it. Here, in contrast, we had a final tortious act when the last toxic dumping took place prior to [disposal company's] 1974 termination. While the effects may be continuing because of the leaching, the tortious act ceased prior to 1975.

*Powell,* 253 Ill.App.3d at 669 (emphasis in original).

### B. Timeliness of Menard's Continuing Trespass & Nuisance Claims

Because Menard filed this action on November 20, 2003, the relevant date concerning the Illinois five-year statute of limitations is November 20, 1998. Based on that date, Defendants contend that Menard's claims are untimely because the degreasing operations that were the source of the groundwater plume were removed and the degreaser building was empty well before 1993, and that Menard was put on notice of the groundwater plume as early as 1995. (Defs.' Stmt. Facts ¶¶ 13, 14, 20, 24-28.) Menard, however, argues that the tortious conduct at issue is not the cessation of degreasing operations. Instead, as alleged in its First Amended Complaint, Menard asserts that the relevant "continued course of conduct" is Defendants' mismanagement of the storage/disposal site resulting in the continuing migration of

11

contaminants. (*See* R. 39-1, First Amend. Compl. ¶ 33.) To determine whether Menard's continuing trespass and nuisance claims are timely, the Court must examine whether Menard has set forth evidence creating a genuine issue of material fact that Defendants' mismanagement of the disposal site resulted in the continued migration of contaminants on the Menard Property.

1.     **Defendants' Motion to Strike**

In support of its argument that the continued course of conduct in this matter involves Defendants' mismanagement of the storage/disposal site, Menard sets forth its First Amended Complaint and letters written by its trial counsel to create a genuine issue of material fact for trial. As Defendants correctly assert in their Motion to Strike Menard's Rule 56.1 Response and Statement of Additional Facts, "mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment." *Burrell v. City of Mattoon,* 378 F.3d 642, 648 (7th Cir. 2004) (citing Fed.R.Civ.P. 56(e)); *see also Celotex Corp.,* 477 U.S. at 324 ("Rule 56(e) ... requires the nonmoving party to go beyond the pleadings"). Accordingly, the Court strikes paragraphs N through T of Menard's Statement of Additional Facts because those statements rely exclusively on Menard's First Amended Complaint.

Next, in their motion to strike, Defendants contend that letters written by Menard's lead counsel in this case, Michael Maher, are hearsay, and thus do not constitute competent evidence for summary judgment purposes. *See* Fed.R.Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Because "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial," the Court must first examine whether Maher's letters are hearsay before determining whether Menard's continuing trespass

12

and nuisance claims are timely. *See Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997).

In response to Defendants' motion to strike, Menard maintains that Mr. Maher's letters do not go to the truth of the matter, namely, that Defendants mismanaged the disposal site resulting in a continued migration of contaminants. Instead, Menard asserts that these letters put Defendants on notice of certain conditions or situations on the Menard Property. Indeed, Menard's reliance on Mr. Maher's September 12, 2002 letter to put Defendants on notice about possible violations of CERCLA and RCRA does not go to the truth of the matter. (R. 58-1, Pl.'s Stmt. Add'l Facts ¶ K, Ex. C.5.) Moreover, Menard relies on Mr. Maher's letters dated August 12, 2005 and September 6, 2005 for the proposition that Menard was concerned that Defendants' investigation plan did not include testing the silt layer on Menard's property. (*Id.* ¶¶ F, G; Ex. C.2, C.3.) Again, Menard does not use these letters to substantively prove that Defendants mismanaged the site resulting in the continued migration of contaminants, but instead relies on the letters to put Defendants on notice about testing the silt layer on the Menard Property. The letters, therefore, are not hearsay.

Next, Menard sets forth a letter dated September 8, 2005 from Menard's counsel to Defendants' counsel for the proposition that Menard demanded that Defendants remediate Menard's property and provide a comprehensive plan regarding the remediation. (*Id.* ¶ H, Ex. C.4.) Menard further relies on this letter for its Rule 56.1 Statement that Defendants never proposed nor sought permission to remediate Menard's property. (*Id.* ¶ I, Ex. C.4.) Menard's reliance on the September 8, 2005 letter to support the fact that Menard demanded remediation does not go to the truth, however, relying on the letter as proof that Menard never proposed

remediation or somehow failed to properly remediate the site goes directly to Menard's contention that Defendants mismanaged the disposal site, and thus is hearsay. Menard fails to offer a hearsay exception, therefore the Court strikes paragraph I of Menard's Statement of Additional Facts.

Finally, Menard presents a letter from its counsel to the Office of the Attorney General and Illinois EPA dated April 6, 2006, to establish the fact that Menard initiated its own investigation that revealed that the contamination was in excess of what Defendants initially disclosed. (*Id.* ¶ J, Ex. C.1.) Using the letter to support the fact that the investigation revealed that the contamination was in excess of Defendants' disclosures goes to the truth of what Menard is trying to prove – that Defendants mismanaged the disposal site. Menard offers no hearsay exception, and thus the Court strikes paragraph J of Menard's Statement of Additional Facts.

### 2. Menard's Claims

Here, Menard asserts that under Restatement (Second) of Torts § 158, and federal and Illinois environmental regulations, Defendants have a duty to remove the contaminants from its property, have failed to properly remove the contaminants, and thus Defendants are liable for continuing trespass. *See Central Ill. Light Co. v. Home Ins. Co.,* 213 Ill.2d 141, 168, 290 Ill.Dec. 155, 821 N.E.2d 206 (Ill. 2004); *see also Mondry v. Speedway SuperAmerica, LLC,* No. 96 C 2159, 1999 WL 1072623, at *7-8 (N.D. Ill. May 12, 1999). Defendants, on the other hand, counter that Menard has failed to set forth evidence creating a genuine issue of material fact that Defendants have failed to manage their remediation duties.

In support of its argument that the continued course of conduct is Defendants' mismanagement of the disposal site resulting in the continuing migration of contaminants,

Menard sets forth undisputed evidence that trichloroethene and its degredation compounds (collectively "TCE") migrated from Wells Manufacturing's operations at the Castwell Property across to Menard's Property.[2] (Pl.'s Stmt. Add'l Facts ¶ B.) Further, Castwell admitted that some of the TCE migrated from the Castwell Property to the Menard Property and remained on the Menard Property as of January 1, 2005. (*Id.* ¶ C.) Moreover, at a June 3, 2004 meeting with the Illinois EPA, an EPA representative suggested that Castwell perform an investigation into the silt layer at the Menard Property. (*Id.* ¶ D.) As of April 2005, the investigation of the silt layer as suggested by the Illinois EPA had yet to commence. (*Id.* ¶ E.)

Viewing these facts – as well as the admissible evidence in the Maher letters – in a light most favorable to Menard, Menard has presented evidence creating a genuine issue of material fact that Defendants have failed in their remediation duties. *See* Fed R. Civ. P. 56(e). More specifically, Menard has set forth evidence that Defendants were aware of the groundwater plume as early as 1995 and admitted that some of the TCE migrated from the Castwell Property to the Menard Property and remained on the Menard Property as of January 1, 2005. In addition, Menard put Defendants on notice about possible violations of CERCLA and RCRA in 2002. Furthermore, the Illinois EPA suggested that Defendants test the silt layer on the Menard Property, and as of April 2005, Defendants had yet to start the investigation of the silt layer. These facts – and all reasonable inferences – suggest that Defendants failed in their duty to

---

[2] In its response brief, Menard mentions that it should be allowed additional time for discovery to establish Defendants' mismanagement of the disposal site. Menard, however, failed to file a motion under Federal Rule of Civil Procedure 56(f) to continue discovery setting forth a justification for the continuance. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 318 (7th Cir. 2003). Therefore, the Court denies Menard's informal request for additional discovery.

remediate because they did not test the silt layer as of April 2005 and Defendants' failure resulted in the continued migration of contaminants on the Menard Property during the limitations period. Because of the genuine issue of material fact, the Court cannot conclude as a matter of law that Menard's claims are untimely. The Court thus denies Defendants' motion for summary judgment as to Counts IV through XI of the First Amended Complaint.

## III.     Count XII – Ejectment Claim

Last, Defendants argue that Menard's claim under the Illinois Ejectment Act as alleged in Count XII of the First Amended Complaint fails as a matter of law. To establish an action in ejectment, a plaintiff must establish that (1) he had possession of the subject premises after obtaining legal title, (2) the defendant thereafter took possession of the premises; and (3) defendant is unlawfully withholding from the plaintiff the possession of the premises. *Bulatovic v. Dobritchanin,* 252 Ill.App.3d 122, 128, 192 Ill.Dec. 66, 625 N.E.2d 26 (Ill. 1993) (citing 735 ILCS 5/6-109); *see also Cree Dev. Corp. v. Mid-America Adver. Co.*, 294 Ill.App.3d 324, 330, 228 Ill.Dec. 727, 689 N.E.2d 1148 (Ill. 1997). "[T]he object of an ejectment action is to obtain possession of land and involves a question of which party holds legal title." *Bulatovic,* 252 Ill.App.3d at 128. In ejectment actions, the 20-year limitations period for adverse possession of real property applies. *Rosenthal v. City of Crystal Lake,* 171 Ill.App.3d 428, 440, 121 Ill.Dec. 869, 525 N.E.2d 1176 (Ill. 1988).

Here, the parties do not dispute that Menard holds title and possession of the Menard Property. In fact, Menard unequivocally alleges in the First Amended Complaint that it "has at all times relevant hereto been in possession of the Menard Property." (First. Amend. Compl. ¶ 2.) Based on this allegation, Defendants argue that Menard has pleaded itself out of court

because a necessary element of an ejection claim is that Defendants are unlawfully withholding possession of the Menard Property. *See Vincent v. City Coll. of Chicago,* 485 F.3d 919, 924 (7th Cir. 2007) (a "plaintiff pleads himself out of court by making allegations sufficient to defeat the suit.").

Defendants' position requires a narrow reading of the Ejectment Act, namely, that a defendant must *literally* possess the property at issue, and as Menard contends, at least one Illinois court has applied the Ejectment Act to cases involving trespass. *See Rosenthal,* 171 Ill.App.3d at 441-2. Also, it is undisputed that TCE migrated from Wells Manufacturing's operations at the Castwell Property across to Menard's Property. Nevertheless, Menard has failed to set forth any evidence creating a genuine issue of material fact that Defendants are unlawfully withholding the possession of the premises from Menard. *See* Fed R. Civ. P. 56(e). In fact, Menard never addresses this third element of its ejection claim, and thus Menard's claim must fail. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of any discussion in briefs amounts to abandonment of claim). The Court thereby grants Defendants' motion for summary judgment as to Count XII of the First Amended Complaint.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. The Court grants in part and denies in part Defendants' Motion to Strike.

**Dated:** September 11, 2007

        **ENTERED**

        _____
        **AMY J. ST. EVE**
        **United States District Judge**